Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of FRANCES KING and Minor Children, Respondents, for Compensation under the Workmen's Compensation Law, for the Death of Her Husband, JAMES KING, *v.* STANDARD OIL COMPANY OF NEW YORK, Employer, and the STATE INSURANCE FUND. Insurance Carrier, Appellants.

Third Department, September 11, 1918.

**Workmen's Compensation Law — injuries to night watchman while returning to duty after abandonment thereof not received as a natural incident of his work — risk not connected with or arising out of employment.**

A night watchman, employed to guard a dock which was being repaired, who left the same to visit the owner of a boat which was fastened about two feet above the dock and about three feet from the end thereof, and, while attempting to return, jumped from the boat upon the portion of the dock which was being repaired, either upon a plank which broke or into the open water and died the next day as the result of exposure, voluntarily abandoned his employment and was not injured as a natural incident of his work. It was a risk neither connected with nor arising out of his employment.

KELLOGG, P. J., and WOODWARD, J., dissented.

APPEAL by the defendants, Standard Oil Company of New York and another, from an award of the State Industrial Commission, made on the 28th day of November, 1917, and also from an award entered in the New York city office of said Commission on the 3d day of April, 1918, confirming the prior award.

*Martin Carey* and *Duncan & Mount* [*Courtland Palmer* of counsel], for the appellant Standard Oil Company.

*Merton E. Lewis,* Attorney-General [*E. C. Aiken, Deputy Attorney-General,* of counsel], and *Robert W. Bonynge,* counsel for the State Industrial Commission, for the respondents.

LYON, J.:

James King was employed as a special night watchman by the Standard Oil Company of New York at its Empire yard

in that city.  His duties were to watch the yard; to keep strangers out; to look for fires, and to go around through the yard and punch the watchman's clock every half hour.  There were four clocks on the dock.  One was situated about ten feet inside the barricade which the workmen erected every night to keep persons from walking onto the dock, which was being repaired.  This barricade was about four feet six inches in height, and separated the dock from the place where repairs were being made.  This barricade extended from the edge of the city pier, which was north of the dock, to a building upon the lands of the Standard Oil Company.  King went to visit the owner of the *Cullen*, a boat which was fastened about two feet above the dock, and about three feet from the end of the dock.  While there he had two drinks of whisky. Attempting to return he jumped from the boat upon that portion of the dock which was being repaired and which was fenced off by the barricade.  He jumped either upon a plank which broke, or into the open water.  He was rescued, but the next day died as the result of the exposure.  The injuries were sustained on April 2, 1917.

We do not think the deceased was engaged in the performance of his duty at the time he jumped from the boat.  He had gone outside his employment at the time he went onto the barge.  He sustained the injury while returning to his work.  His duties were confined to the yard.  This visit to the captain was a clear violation of his duty.  He was employed to watch the premises.  He voluntarily abandoned his employment.  His injury was not received as a natural incident of his work.  It was neither a risk connected with his employment, nor a risk arising out of his employment. The accident resulted from the act of the claimant's intestate, disconnected wholly from the sphere of his employment.  It was held in *Matter of Gifford* v. *Patterson, Inc.* (222 N. Y. 4) that a man who had departed from his employment sufficiently long to drop asleep while employed as a night watchman, by means of which he fell down a chute and was killed, could not be awarded compensation.  As the court said in that case: " His injury was not received as a natural incident of his work.  It was not a risk connected with his employment or arising out of and in the course of his employment.  The

acts of Gifford as found by the commission, instead of being in the course of his employment, were directly contrary to the object and purpose for which he was employed." The deceased was injured while attempting to return to his employment.

In *Reed* v. *Great Western Ry. Co.* (2 B. W. C. C. 109), where an engine driver in the employment of the respondent company left his engine when it was standing at rest, and crossed the line in order to communicate with the fireman of another engine on business of his own not in any way concerning his work or his employer's, on his way back to his engine he was knocked down by a truck and killed. Held, upholding the decision of the Court of Appeal of England, that the accident did not arise " out of and in the course of " his employment within section 1 (1) of the Workmen's Compensation Act of 1897.*

In *Spooner* v. *Detroit Saturday Night Co.* (187 Mich. 125), where decedent was employed to operate an engine and dynamo in the basement, and no duty called him to the upper floors, injuries incurred which caused his death while running an elevator from the second to the third floor, did not arise out of and in the course of his employment. " The injury must have been a natural incident of the work." (*Matter of O' Neil* v. *Carley Heater Co.*, 218 N. Y. 414.)

" If there is only a casual or remote connection between the hazard of the employment and the loss — if the one does not flow naturally from the other — the liability is not established." So where a person was employed in delivering flowers but in addition helped put them into a window box and was injured, causing his death, no recovery was allowed. (*Matter of Glatzl* v. *Stumpp*, 220 N. Y. 71.)

The injury must be received (1) while the workman is doing the duty he is employed to perform, (2) and also as a natural incident of the work. It must be one of the risks connected with the employment, flowing therefrom as a natural consequence, and directly connected with the work. (*Matter of Heitz* v. *Ruppert*, 218 N. Y. 148.)

Returning to the dock was incidental to returning to his

---

* See 60 & 61 Vict. chap. 37, § 1, subd. 1.— [REP.

duties which he abandoned when he went to call on the captain of the *Cullen.* The deceased was not back in his employment until he landed safely upon the dock.

The award should be reversed, and the case dismissed.

All concurred, except JOHN M. KELLOGG, P. J., and WOODWARD, J., dissenting.

Award reversed and claim dismissed.