[Civil No. 2614. Filed June 27, 1927.]

[257 Pac. 641.]

OCEAN ACCIDENT AND GUARANTEE CORPORATION, LIMITED, Petitioner, v. THE INDUSTRIAL COMMISSION OF ARIZONA, and R. B. SIMS, BURT H. CLINGAN and H. S. McCLUSKEY, Members of Said THE INDUSTRIAL COMMISSION OF ARIZONA, Respondents.

Messrs. Kibbey, Bennett, Gust, Smith & Lyman, for Petitioner.

Mr. John J. Taheny for Respondents.

ROSS, C. J.—This is an application by the Ocean Accident and Guarantee Corporation, Limited, for a writ of review of an award in favor of Vivienne Leftwich against it as the insurer of E. C. Mason, doing business as the Owl Drug Company, her employer.

It is provided in the Compensation Act, chapter 83, section 90, Session Laws of 1925, that any party affected by a decision of the Industrial Commission may prosecute such a proceeding for the purpose of having the lawfulness of the original award, or the award on rehearing, inquired into and determined. This appeal is from the award on a rehearing.

The return of the Commission includes the evidence taken in the case and all the proceedings had before it. It appears from the return that it was stipulated at the rehearing that applicant, Leftwich, was an employee of the Owl Drug Company at the time of her injury; that she was disabled by accident for the period set forth in the award; and that her disability is permanent as therein described.

It also appears therefrom that the Commission made a finding to the effect that applicant, Leftwich, while employed by E. C. Mason, doing business as the Owl Drug Company, sustained such injury by an accident arising out of and in the course of said employment. The only question raised on this appeal is as to whether this finding is supported by the evidence; it being contended by the petitioner

that the evidence shows applicant was not injured by an accident arising out of and in the course of her employment, and that therefore the Commission acted in excess of its powers in making the award. It is provided in the act that "if necessary, the court may review the evidence" (section 90), and we find the errors assigned make such review necessary for the purpose of determining whether the evidence supports the Commission's findings.

The facts are as follows: The employer, E. C. Mason, doing business as the Owl Drug Company, had in 1926 four drug-stores in the city of Phoenix, and the claimant, Vivienne Leftwich, was the buyer of the toilet goods departments of all such stores and had personal charge of the toilet goods department of store No. 2, located at the corner of Adams Street and First Avenue.

On March 24th, 1926, the Owl Drug Company wrote a letter to Richard Hudnut Company, of New York, stating in brief that store No. 2 had developed a thorough toilet goods department; that it was found necessary to put a special attendant in this department; suggested a highly trained young woman, then in Phoenix, whose services were available; expressed a keen desire to put the Richard Hudnut goods "over big," and asked said Hudnut Company if they would assist in paying her salary of one hundred dollars a month in case satisfactory arrangements could be made. On March 30th the Hudnut Company answered the above letter stating that the matter inquired about had been referred to its representative for the district of Arizona, a Mr. McGrath. McGrath came to Phoenix, and on May 1st saw Mason and also met applicant, Leftwich. This was on Saturday, and probably some time in the afternoon, at the sample rooms of the Adams Hotel. Later, at store No. 2, it was arranged between Mason

and Leftwich that the latter should entertain Mc-Grath over the week end. Leftwich says:

"I was asked to entertain this gentleman over the week end. It was in the Owl Drug Company that he (Mason) asked me. I was asked to entertain them and try to put over the deal for the store. He (Mason) wanted me to entertain this gentleman—be with him and try to work up this deal."

Mason's explanation of the arrangement was:

"Mr. McGrath was here in the interest of Richard Hudnut & Co. I was trying to perfect an arrangement with them for the benefit of the Owl Drug Company, and I told Mrs. Leftwich that they were to be here over Sunday and that it would be a good idea if she would entertain them; doing anything they would like to do; that day I was tied up so that I couldn't get away, and I asked her to do it, leaving it up to her what to do and to what extent."

Thus commissioned, applicant says she invited Mc-Grath to go to Prescott for the week end, and that in his automobile she and two others (whose names she declined to disclose) made the trip. On May 2d she says she had an accident at Granite Dells where she was asked to go with McGrath, and when asked how the accident happened she said, "I slipped off a rock and fell."

In addition to the above testimony, it was shown that applicant did the purchasing of toilet articles for the four Owl drug-stores, and in doing so would sometimes order goods by telephone, sometimes through traveling salesmen or drummers, sometimes by going to salesrooms in Phoenix.

It was also in evidence that the Richard Hudnut Company did not as a rule make arrangements, or contracts, of the kind sought by Mason, in cities and communities as small as Phoenix; and it appears that Mason thought the contract a very desirable one, in that if under it his sales amounted to enough,

discounts were allowed by Hudnut and were to be applied on his store demonstrator's salary.

It also appears that the expenses of the trip were not borne by applicant nor Mason.

Under our Compensation Act, section 70, the injuries to employees that are compensable are those suffered "by accident arising out of and in the course of employment." And, while the context of the act shows that a greater range of employees than in most acts is intended to be covered, there is not manifested any purpose to change or modify the character or kind of accidental injury, for the words used in describing such injury are almost if not identical with those in the English compensation statute and the statutes of our sister states. Therefore, as might be expected, the words of our statute describing the kind of injuries to be compensated were, before we adopted them, construed many times by the English courts and also by the state courts. The definition of that phrase most largely quoted and approved in this country is the one by RUGG, Chief Justice, in *Re McNicol,* 215 Mass. 497, L. R. A. 1916A 306, 102 N. E. 697, and which we take it is not a departure from but in harmony with the English conception as contained in their decisions. It is as follows:

"The first question is whether the deceased received an 'injury arising out of and in the course of his employment.' . . .

" . . . It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test if the injury can be seen to have followed as a natural incident of the

work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.''

The learned judge who formulated this description of compensable injuries disclaimed any intention to make it all-comprehensive. It perhaps gives as accurately as any other definition the earmarks or features of compensable injuries, as distinguished from those not compensable. Under such definition it is indispensable that the injury should both arise out of and in the course of the employment. It is not enough that it occur in the course of the employment nor that it arise out of the employment. Both are essential and must be established by the claimant.

In applying the rules for determining whether the accidental injury is compensable, the facts of each individual case of course have a controlling influence; and the facts are so varied that it is impossible to devise a formula that will fit all cases. Most cases, we daresay, fall easily within the one class or the other. Then, there are the border line cases, and in these it is always difficult to say in which class they should be placed.

We believe the decisions, English and American, are agreed that the compensation laws should be

given a liberal construction, with a view of effectuating their evident purpose of placing the burden of injury and death upon industry, and we are in entire accord with that construction. However, when it clearly appears that a claimant has failed to establish that his accidental injury arose out of and in the course of his employment, or either, the duty of so declaring cannot be evaded. On the contrary, if we entertain a serious doubt we shall feel it our duty not to hesitate to apply a liberal rule of construction in favor of the claimant.

The Compensation Act is not an insurance law requiring the employer to compensate every injury an employee suffers while in his employment, but only those accidental injuries that arise out of and in the course of the employment. As has been well said, to extend the law to cover all injuries sustained by an employee while employed would be giving to employees protection against the common and everyday accidents to which all mankind is daily exposed and make them a privileged class. Compensation must therefore be limited to those employees within the intendment of the legislation providing for it, and not extended to include cases clearly without its intent and purview. With these observations in mind we will now proceed to consider the facts of this case.

It seems to us that the services applicant undertook to render were in the line of her duty as purchasing agent for Mason. Her commission was to entertain the Hudnut agent over the week end as she in her discretion and wisdom might choose. If an agreement with the Hudnut agent had not been concluded on Saturday or if the terms of such an agreement were unsettled and further negotiating necessary before a contract could be concluded and Mason believed his interests would be advanced by her keeping in touch with and entertaining over the week end the agent, and asked and instructed her to

render such service, we do not think she would lose her status as an employee in adopting as a means of entertaining the agent the automobile trip to Prescott and Granite Dells. While it was not contemplated that she should conclude a purchase of Hudnut goods, or enter into any agreement therefor during the week end, she was expected to exert her personal influence during the interval towards effecting the accomplishment of such object. In doing so she was not departing from her duty as purchasing agent of Mason, but under his specific instructions carrying out such agency, only in a slightly different way than the usual.

The petitioner contends that if applicant's employment permitted her to make a week end trip to Prescott, she might even extend it to Mexico or California. While her commission was general, doubtless the law would imply limitations upon it. We concede that the method of entertainment should be lawful and of a character reasonably adapted to effectuate the desired end; likewise the place of such entertainment should not be too remote or of an unnecessarily hazardous character. Prescott would be a long way if our roads were unimproved and travel was by horse and buggy. With our good roads and the automobile the trip can easily be made in from three to four hours. We think we may say, what everybody knows although it is not in the record, that it is a common occurrence for people of the Salt River Valley to make week end trips to Prescott and Granite Dells, especially so through spring and summer.

We therefore conclude that applicant did not exceed her authority in making the trip to Prescott, and was under the instructions of her employer doing so in the performance of her duty.

There is, however, in the record no evidence to sustain the finding of the Commission that the acci-

dent arose out of and in the course of her employ- \ ment. True, the applicant says, "I slipped off a rock and fell," and in another place she says this happened at Granite Dells. There is a dearth of testimony as to what Granite Dells is. The members of this court personally know that it is a pleasure resort where swimming, dancing, and rock climbing may be indulged in. The witness does not disclose any of these facts, nor does she state what she was doing or why she fell. It is not shown that the Hudnut agent was present at the time or that she was in any way entertaining him. So far as the record shows, the claimant may have left her employment of entertaining the agent and gone on an errand, by herself or with other companions, for her own pleasure. If she was hurt while acting out of the scope of service she was employed to give, she was clearly not injured in the course of her employment, nor did the accident arise out of the employment. The principle is that if an employee quits his employment and is injured while doing something for his own benefit or accommodation he loses the protection of the act while so engaged. 28 R. C. L. 803, § 92; *Spooner* v. *Detroit Saturday Night Co.,* 187 Mich. 125, L. R. A. 1916A 17, 153 N. W. 657; *Larke* v. *John Hancock Mutual Life Insurance Co.,* 90 Conn. 303, L. R. A. 1916E 584, 97 Atl. 320.

The point is that there was shown no connection between the employment and injury, or that the injury was incidental to the work she was engaged to perform. It is not sufficient simply to show employment and an injury during the period of employment. The employee must go further and show that the injury had its origin from a risk connected with the employment and that it flowed from that source as a rational consequence.

We think a full disclosure of the facts and circumstances surrounding and contributing to the acci-

dent, including the time and place and how it happened, as also the persons present, should have been made in order to enlighten the Commission on the all-important question of whether or not the accident arose out of and in the course of the employment.

The order and judgment is that the award be set aside.

LOCKWOOD and McALISTER, JJ., concur.