[Civil No. 3425. Filed March 21, 1934.]

[30 Pac. (2d) 846.]

UNITED STATES FIDELITY AND GUARANTY COMPANY, a Corporation, Petitioner, v. THE INDUSTRIAL COMMISSION OF ARIZONA, J. NEY MILES, HOWARD KEENER and L. C. HOLMES, as Members of Said Industrial Commission, S. C. TURNER, and THE MARICOPA CREAMERY COMPANY, INC., Respondents.

Messrs. Moore & Shimmel, for Petitioner.

Messrs. Moeur & Moeur, for Respondent S. C. Turner.

Messrs. Chalmers, Fennemore & Nairn, Mr. J. Early Craig and Mr. Richard Fennemore, for Respondent The Maricopa Creamery Company, Inc.

LOCKWOOD, J.—This case comes before us on *certiorari* from an award of the Industrial Commission of Arizona made in favor of S. C. Turner, hereinafter called respondent, against United States Fidelity & Guaranty Company, a corporation, hereinafter called petitioner.

There are some six assignments of error, but we think the case should be decided on the first, which is that the evidence does not sustain the finding of the commission that the accident, for which compensation was awarded, arose out of and in the course of respondent's employment.

In order that we may pass properly on this question it is necessary that we make a statement of the facts in the case. In so doing, we must, of course, construe

them as strongly as is reasonably possible in favor of respondent. So stated, they must be taken as follows: Respondent was, and for a long time had been, in the employ of the Maricopa Creamery Company, a corporation, hereinafter called the company. He was in general charge of the field operations of the company, so far as the supervision and administration of the procurement of butter-fat was concerned, including the inspection of farmers' milk and butter-fat, the supervision of cash loans and similar matters, both inside and outside of Arizona, but was subject in all things to the orders of the company's general manager, at that time W. R. Montague, and it does not appear that his powers extended to affecting other employees of the company, except in connection with his own particular duties. In the course of his employment he necessarily traveled a great deal over the state and incurred considerable expense, such as gasoline and repair bills for automobiles, hotels, meals and incidental matters customary in travel. He had never had any specific instructions in regard to the entertainment of either customers or employees, but it was generally understood with his superior that if he desired to take prospective customers to dinners or to the movies, or indeed, to entertain some of their friends in the same manner, so long as it was company business, it would be considered proper, and the expenses of such entertainment would be paid. In fact, Turner was, so far as the butter-fat purchasing department was concerned, thoroughly trusted by his employer to use his best judgment in the handling of business, and ordinarily any expenses incurred by him would be assumed by his superiors to be legitimate ones on behalf of the company business, so long as it did not clearly appear to the contrary.

About the 25th of October, 1932, Turner went to Safford upon business for the company. The cream-

buying situation in that vicinity had been considerably upset, and the company had lost some business because of the operations of one of its competitors, and it was thought advisable for Turner to go down to Graham county and see if he could not improve conditions. Under these circumstances he went to Safford to see J. A. Evans, who was the local agent of the company at that place. He spent most of the day of the 25th going over the business, and in the afternoon left Safford in a coupe owned by one Clemens, who was also in the employ of the company, taking with him Evans, the latter's wife, and a man named Gregg.

Turner, in his evidence before the commission, stated that the purpose of the trip was "taking Gregg over the route he would haul cream over"; Gregg being one of the employees of the company, who had charge of its hauling on the south side of Salt River. His statement to this effect, however, is so contradicted by the remainder of his testimony as to the circumstances surrounding the trip and his actions, that it is incredible a reasonable man could for one moment believe it. Indeed, although counsel for respondent in their brief refer several times to his testimony to this effect, the case was apparently presented to the commission and to this court by all parties on the theory that the real purpose of the trip was the entertainment of Evans and his wife at Douglas, and we are satisfied that the commission must have made its award on the assumption that such was the fact.

We therefore consider the case on that basis. The party left Safford about 4 P. M., and upon reaching Willcox stopped long enough for Gregg and the Evans to get something to eat at a cafe, while respondent procured some gas for the car. They then drove on to Douglas, the purpose being, as stated by Turner, to entertain Mr. and Mrs. Evans. They reached

Douglas about 8:30 P. M. and all crossed to Agua Prieta, remaining there until about 11. They then took Mrs. Evans back to Douglas to stay with her mother, who resided there, and the men of the party again visited Agua Prieta, returning to Douglas some time after midnight. They then picked up Mrs. Evans and started back for Safford. Some twenty miles beyond Willcox on the Safford road the car overturned, and respondent received the injury for which he was awarded compensation.

The question is whether or not at the time of the injury respondent was in the due course of his employment. It is contended by him that the case of *Ocean Accident & Guarantee Corp.* v. *Industrial Com.*, 32 Ariz. 265, 257 Pac. 641, 643, is decisive in his favor upon this point. In that case the injured person was a young woman named Vivian Leftwich, employed as buyer in the toilet goods department of the Owl Drug Company in the city of Phoenix. Her employer desired to secure the agency for handling the Hudnut Products, a well-known line of cosmetics, and arranged for the representative of the Hudnut Company, one McGrath, to investigate the matter. Leftwich was instructed by the employer to entertain McGrath over the week-end, and endeavor to put over the deal for representation. The specific instructions were that, since McGrath was to be in Phoenix over Sunday, she was to do anything the latter desired in the way of entertainment; the details being left to her. Under these circumstances, she, McGrath and two other parties went to Prescott, and while there she slipped from a rock and fell, injuring herself. In passing on the question of whether she was in the due course of her employment, we said:

"It seems to us that the services applicant undertook to render were in the line of her duty as purchasing agent for Mason. Her commission was to

entertain the Hudnut agent over the week end as she in her discretion and wisdom might choose. If an agreement with the Hudnut agent had not been concluded on Saturday or if the terms of such an agreement were unsettled and further negotiating necessary before a contract could be concluded and Mason believed his interests would be advanced by her keeping in touch with and entertaining over the week end the agent, and asked and instructed her to render such service, we do not think she would lose her status as an employee in adopting as a means of entertaining the agent the automobile trip to Prescott and Granite Dells. While it was not contemplated that she should conclude a purchase of Hudnut goods, or enter into any agreement therefor during the week end, she was expected to exert her personal influence during the interval towards effecting the accomplishment of such object. In doing so she was not departing from her duty as purchasing agent of Mason, but under his specific instructions carrying out such agency, only in a slightly different way than the usual."

We held that under such circumstances Leftwich was acting in the due course of her employment in making the trip to Prescott, but that the evidence did not show whether the particular thing she was doing at the time when she was injured was done in the course of entertainment of McGrath, and remanded the case for further evidence upon that point. We think this case is authority for the proposition that the social entertainment of prospective customers, or other persons doing business with an employer, may at some times and under some circumstances be considered as within the course of employment of an employee. But it by no means follows that all accidents suffered by employees, when engaged in different kinds of social activities, interesting or amusing, are compensable under our Workmen's Compensation Act (Rev. Code 1928, § 1391 et seq.). We should always remember what even

appellate courts are at times prone to forget, that the Workmen's Compensation Act was not meant to be, and is not, a general accident insurance system. It is meant to cover only accidents which arise out of and are caused by the conditions of employment, and not those which may occur outside of such employment. It may be that the state at some time will provide a plan for general accident insurance, wherein the injured party will need only to prove the injury, but such is not now the law. Neither must we assume that because the social activities of an employee are known to and approved by, or even paid for by his employer, that they are necessarily a part of the due course of his employment. This is particularly true in view of the fact that many employers are insured against the cost of compensation by various outside agencies. The premiums which the employers pay are based upon accidents occurring in the employment and not out of it, and it is unjust to the insurance carrier that it be compelled to pay for an accident against which it has not insured the employer. Too often it occurs that when the employer is carrying insurance, and thus suffers no pecuniary loss himself through an accident to his employee, that his natural emotions of sympathy for an injured man, and interest in an old and trusted employee, leads him to the limits of, or even beyond the bounds of, strict veracity, in his endeavor to assist the injured party to recover from the insurance carrier. We think, in view of the purpose and language of our statute, and all of these matters which must be considered in its interpretation, that in order to bring a case of injury, occurring while the employee is engaged in the process of entertaining some person socially, within the purview of our Compensation Act, the injured employee must (a) be under previous instructions from his superior to do the entertaining, and (b) these instructions must be

definite enough so that they clearly apply to the person or class of persons who are being entertained, and the circumstances of the entertainment. This does not mean that the person to be entertained must necessarily be designated by name, but he must at least belong to a specifically designated class which the employer has given instructions shall be entertained, and the circumstances of the entertainment must be such as are clearly stated or implied by those instructions.

Let us apply these rules to the facts in the present case. It is true Turner's position with the company was such that he had more latitude in determining who should be entertained on behalf of his employer than would the ordinary employee, and we think it was not absolutely necessary, before his giving such entertainment, that he should have been specifically told by his superior the particular person to entertain, or the occasion when it was to be done, but it was necessary that such entertainment should be along the general line of his duty, and for the benefit of the company, and not for his own pleasure.

The testimony of W. R. Montague, the general manager for the company, shows plainly that he was desirous of assisting respondent in securing compensation, so far as he could without departing from the truth, and his testimony as to Turner's powers and duties are undoubtedly as favorable to the latter as it could honestly be. We are satisfied therefrom that the company had never given instructions to Turner to entertain fellow employees and did not contemplate his so doing, although it did expect him at times, when his judgment approved, to entertain prospective customers and patrons of the company. It is true that Montague intimated that he would not have questioned any reasonable expense account turned in by Turner, but the fact that an employer would not scrutinize closely the expense account of a trusted

employee, or even that he might knowingly allow some items which, strictly speaking, were for personal and not business expenses, does not necessarily mean the expenses were incurred in the line of duty. An employer may from his own funds make a present to an employee for any or no reason, but he may not by doing so alter the liability of a third party who insures him with specific limitations.

The record shows clearly that the purpose of Turner's trip to Douglas was, aside from his personal pleasure, at most the entertainment of three co-employees of the company. In the absence of specific instructions from his superior to entertain these parties, or at least those of that class, and in view of his official duties, which were confined generally to the purchasing department of the company, and not to its sales or personnel departments, we are of the opinion from the whole record that he was not engaged in the due course of his employment on his trip from Safford to Douglas, and returning, and that his undoubtedly serious injuries are not subject to compensation under the Workmen's Compensation Act. We have examined carefully all the cases cited by respondent, and are of the opinion that in all of them where it appears the only thing which was claimed to constitute the duty of the employee was the entertainment of some person, the instruction to entertain was specific for a particular person or, if it applied to a class, the entertainment of members of that class was reasonably calculated to benefit directly the employer's business, and the duty of the employee to entertain them covered by express or implied instructions. *Commercial Casualty Co.* v. *Strawn,* (Tex. Civ. App.) 44 S. W. (2d) 805; *Constitution Ind. Co.* v. *Shytles et al.,* (C. C. A.) 47 Fed. (2d) 441. In no cases, so far as we are aware, has compensation been allowed when the entertainment of a coemployee, without specific directions from the

employer, was the only "course of employment" attempted to be shown. For the foregoing reasons the award is set aside.

ROSS, C. J., and McALISTER, J., concur.