407 P.2d 391

Tom CHARLES, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Ken Clarke & Associates, Incorporated, Respondents.

No. I CA–IC II.

Court of Appeals of Arizona.

Nov. 10, 1965.

Donald J. Morgan, Phoenix, for petitioner.

Robert A. Slonaker, Robert K. Park, and Arthur B. Parsons, Jr., Phoenix, for respondents.

CAMERON, Judge.

This is a writ of certiorari to review the lawfulness of an award of the Industrial Commission of Arizona, denying compensation for an injury received by the claimant in an automobile accident.

The issue before this Court is whether the claimant was injured in an accident arising out of and in the course of his employment.

Claimant was employed by an independent insurance agency, Ken Clarke & Associates, hereinafter called the employer, as an office manager and sales representative. The employer had developed a specialized type of insurance program tailored to fit the needs of credit bureaus and collection agencies. The employer was requested to explain this type of policy coverage at a convention of credit and collection association members which was being held in Tucson. The employer designated the claimant and a fellow employee, Mr. Peterson, to attend the convention. The two men drove to Tucson in Mr. Peterson's automobile on Friday, 10 April, 1964. They met various members of the conventioning group, dined and socialized with them, and discussed business including the possibility of claimant's attending the credit group's national convention to explain his insurance program. An officer of the association suggested this possibility.

The association convened on Saturday morning, and claimant presented his insurance talk to the group. Claimant was with the convention and various individual members of the association the entire morning. Mr. Peterson left on another trip, and claimant was without transportation. The claimant spent the early afternoon socializing with members of the association. He then left the convention motel with a friend, Reed, whom he had telephoned. They talked, had several drinks at bars, and drove slowly past the Payne Livestock Auction, in order that claimant could get a general idea of the livestock auction's physical plant preparatory to negotiating with them concerning insurance coverage.

Claimant and Reed proceeded to Reed's riding stable where claimant helped his friend, Reed, prepare for an evening hayride. Claimant had arranged for Reed's liability insurance through a Tucson agency some years ago, and claimant testified at the hearing that after looking at Reed's operation, that his company could not write the insurance for Reed.

Claimant was without transportation and secured a ride back to the convention motel at approximately 9:00 p. m., with another friend, Speck Wilson. The claimant testified that he had, at one time, tried to write Mr. Wilson's truck fleet insurance in Tucson, and that he did not consider him a good risk at the present time. Claimant intended to have dinner later that night with an officer of the association.

On the way back to the convention motel, at a point near Grant Street and Miracle Mile or Oracle Road in Tucson, the parties were involved in an accident and claimant suffered an intertrochanteric fracture of his right hip.

The issue is whether the claimant's injury arose out of and in the course of his employment. The Commission entered a finding and award for non-compensable claim on 14 July, 1964. After re-hearing and petition, the award denying compensation was affirmed 14 January, 1965. Claimant petitioned this Court for a writ of certiorari to review the lawfulness of the Industrial Commission's award. Two responses to the petition for the writ of certiorari were filed; one by the Industrial Commission of Arizona, generally denying the allegations in the petition, and one response filed by the claimant's former

employer, Ken Clarke & Associates, which, in part, stated as follows:

"Further responding to the petition, this respondent respectfully shows the court that after considering all the evidence, the respondents' agents expressly advised the referee the petitioner was in the course of employment and that the accident arose naturally and reasonably from the activities in which he was engaged on behalf of the employer."

The Commission having found that claimant's injury did not arise out of or in the course of his employment, we must examine the record and see whether or not this finding is reasonably supported by the evidence, Snyder v. Industrial Commission, 96 Ariz. 81, 392 P.2d 34 (1964).

The claimant introduced the testimony of four witnesses in addition to his own testimony. Three of these witnesses had extensive backgrounds in the insurance field, and the fourth, an officer of the credit association, had invited Ken Clarke & Associates to send a representative to the association meeting. One of the three insurance men was the Executive Secretary of the Arizona Association of Independent Insurance Agents, who testified that he had been in the business 56 consecutive years. He was questioned as to separate phases of claimant's activities while in Tucson, and asked for his opinion as to whether they were not within the scope of claimant's employment. In each instance, he answered that they were within the scope of his employment.

The vice president of Ken Clarke & Associates testified that claimant was specifically instructed to contact as many friends as he could while in Tucson for the benefit of Ken Clarke & Associates. He testified:

"Anything that he did in the course of meeting people, even old friends, would further this object of the company."

Mr. Clarke, the claimant's employer at the time of the accident, testified that even in turning down insurance risks, that it would be beneficial to the company. He testified as follows:

"Q. Is it also, Mr. Clarke, good business, as Mr. Charles related, to diplomatically refuse a risk that he doesn't feel is good for the company?

"A. Absolutely.

"Q. And to leave the door open so that, in the event it does become a good risk, you will still have a way in?

"A. Why certainly. We don't want to make enemies of people. Things change. Maybe next year that would be a good risk and we would want it."

Claimant was no longer in the employ of Ken Clarke & Associates at the time the hearing was held. Claimant testified that he left their firm to accept a better offer on 1 August, 1964. No business relationship existed between the claimant and Mr. Clarke and the vice president of Mr. Clarke's firm when they testified in his behalf at the time of the hearing. This is not the fact situation suggested by the Commission in its lengthy quotation of the Court's rationale of Ocean Accident & Guarantee Corp. v. Industrial Commission, 32 Ariz. 265, 257 P. 641 (1927), and cited in U. S. Fidelity And Guaranty Co. v. Industrial Commission, 43 Ariz. 305, 30 P. 2d 846 (1934), in which the court stated:

"Too often it occurs that when the employer is carrying insurance, and thus suffers no pecuniary loss himself through an accident to his employee, that his natural emotions of sympathy for an injured man, and interest in an old and trusted employee, leads him to the limits of, or even beyond the bounds of, strict veracity, in his endeavor to assist the injured party to recover from the insurance carrier." U. S. Fidelity v. Industrial Commission, 43 Ariz. 305, 311, 30 P.2d 846, 849.

In addition to the testimony by claimant's former employer, the employer filed a re-

sponse to the writ of certiorari admitting that the claimant was acting in the scope of his employment at the time of the accident. While the response was not before the Commission at the time the Commission held its hearing, and may not be considered by this Court in determining whether or not the Commission acted reasonably, still the testimony given at the hearing amply supports the response.

A fourth witness, Mr. Snyder, who was the secretary of the credit association, testified as follows:

"Q. You expected to see him again that evening, on Saturday?

"A. I did, yes, sir."

and

"Q. You expected to see him again that evening at the Convention Center, the Sands Hotel?

"A. Yes, that had been our plans.

"Q. Were you accompanied by your wife?

"A. Yes, I was.

"Q. Had your tentative plans been to have dinner or something that evening?

"A. Yes."

The Commission contends that the only evidence about claimant's activities in Tucson was claimant's own testimony and they are not required to believe claimant's uncorroborated statements. Admittedly, the only testimony received at the hearing was testimony offered by the claimant. This does not mean that the Commission may then elect to reject all the testimony given. After reading the transcript of the hearing, we feel that there is more than ample corroboration to show claimant's purpose in Tucson and his various activities in relation to his employment as well as injuries. In relation to the accident, Mr. Snyder testified that he was going to have dinner with claimant that night and that he visited with the defendant in the hospital the next morning. Claimant testified that he was returning to the motel to see his host. He was on a direct route trav-

eling in the appropriate direction to accomplish this. Both claimant's employer and his immediate superior testified that not only had claimant not abandoned his occupation, he was doing exactly what they expected him to do. His supervisor testified that he had directed claimant to contact Tuscon friends with a view towards turning up business prospects. But for claimant's employment with Ken Clarke & Associates, claimant would not have been in Tucson at the time.

In Edwards v. Industrial Commission, 94 Ariz. 342, 385 P.2d 219 (1963), the petitioner's husband was on a business trip for the State Highway Department drawing a per diem on the day of his death. After stopping in a motel in Prescott for the night, the deceased evidently decided to go swimming and drowned. The Supreme Court stated that:

"There must be a causal connection between one's employment and the accidental death or injury sustained before compensation can be made. The only connection between decedent's employment and his accident is that his assignment took him to Prescott and necessitated his finding overnight lodging there. More is required under the industrial compensation laws of this state as we have interpreted them." Edwards v. Industrial Commission, supra, at 343, 385 P.2d at 220.

In the instant case, we believe that the nature of claimant's employment satisfies the "more" that is required. Claimant was employed in a business which required him to meet and socialize with various people looking toward not only obtaining business, but also in rejecting "bad" business for his employer. That the potential clients were "old friends" does not make them any the less potential clients of his employer's firm. As has been stated:

"The test as to whether specific activities are considered to be within the scope of employment or purely personal activities is the reasonableness of such activities. * * * If the

activity is found to be reasonable 'the risk inherent in such activity is an incident of his employment'." Fleer v. Glens Falls Insurance Co., 16 A.D.2d 186, 226 N.Y.S.2d 918 (1962).

We have carefully examined the whole record and we find little conflict in the evidence. The only reasonable interpretation which can be made is that claimant was within the scope of his employment when he was injured, and that his injury arose out of and in the course of his employment. The award is set aside.

STEVENS, C. J., and DONOFRIO, J., concur.