424 P.2d 842

**Frank Henry McCUE, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, and the Arizona State Guard and Detective Agency, Respondents.**

**No. 1 CA–IC 110.**

Court of Appeals of Arizona.

March 9, 1967.

a security guard. He was working at the Valley National Bank Operations Center adjacent to the Black Canyon Highway. On 19 May 1965, petitioner was working the shift from midnight to 8:00 a.m. At approximately 3 o'clock a.m. he was struck by a car and injured while crossing the southbound access lane to the Black Canyon Freeway. There had been a two-car collision in the northbound lane of the Freeway shortly before the accident in which petitioner was injured took place. A crowd of employees from the Bank Operations Center had crossed the access road to look at the accident.

The Commission issued an award of noncompensable claim. The petitioner protested this and filed a petition for rehearing, and as a result, a hearing was held 28 February 1966. The petitioner testified as a witness at the hearing. He stated that because of his injuries he was unable to remember the nature and extent of all the events that took place in the early morning of 19 May 1965. He said it was not his practice to go out onto the street to investigate automobile accidents, and that in the past when he had gone off the Bank property onto the access road or south of the canal, he had done so for the purpose of investigating the activities of persons or vehicles he had observed in that vicinity; and, that this type of investigation was part of his duty as a security officer for the Bank Operations Center. The petitioner was asked whether or not he had been instructed to go off the property to investigate incidents of this type and he replied that he had not been specifically instructed to do so, but his instructions were to handle the situation at his discretion, and that "naturally I assumed that it is part of the area of the bank, and when anything looks like it might need [sic] a security reason we go out there and investigate it." He testified that he had previously had occasion to make an investigation of boys running from the Valley Bank Operations Center parking lot to the canal road, and on that occasion, after telephoning to the city police, he followed the boys off the Bank

Robert J. Spillman, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, by Noel J. R. Levy, for respondent Industrial Commission of Arizona.

STEVENS, Judge.

This case is before the Court of Appeals by writ of certiorari granted on application of the petitioner, Frank Henry McCue, to review the lawfulness of an award and findings of The Industrial Commission.

The primary matter for our consideration is whether the evidence supports the findings and award that the petitioner did not sustain an accident arising out of and in the course of his employment.

Petitioner was employed by The Arizona State Guard and Detective Agency as

property in an attempt to see if they had stolen something from one of the cars in the parking lot.

The petitioner's immediate supervisor, Patrick Ganser, testified. He stated that he was with The Arizona State Guard and Detective Agency, and was in charge of bank security. Mr. Ganser said that he instructed petitioner and the other security guard employees as to the nature and extent of their duties. He testified that he also discussed the security measures with Mr. MacAllan, the manager of the Valley Bank Operations Center. He said that in his instructions to his employees, he gave them instructions as to certain circumstances when it would be necessary for them to go off the property they were guarding to fully perform their duties. He stated that the Guard and Detective Agency has a set of rules as to "any surrounding security measure, anything pertaining to the bank like people on the road that they have to investigate or cars that they are to investigate and find out the reason for these people being there and if they have any business with the bank." Mr. Ganser made it clear that it was not their employees' job to accost anyone on the public highway, or to investigate accidents occurring on the public highway, but he emphasized that the job of their guards was the security of the Bank's buildings. Mr. Ganser concluded that in his professional opinion the petitioner had been acting in the line of duty on the evening the accident occurred.

William MacAllan, vice president and manager of the Valley National Bank Operations Center, also testified. He stated that the computer center contained equipment of great value, and the peripheral equipment which goes with it, which performs the Bank's proof and bookkeeping function. He testified that the Bank has a working arrangement with The Arizona State Guard and Detective Agency. He said he had discussed security measures with Mr. Ganser of that organization. Mr. MacAllan testified that from his understanding of the working arrangement with the Guard and Detective Agency, and from his experience as manager of the Operations Center, in his opinion it would be appropriate for one of the security guards to investigate persons or automobiles which were actually off the property of the Bank, and specifically on the access road to the Black Canyon Highway. He stated that they would expect their security guard to "investigate anything that might have to do with the security of the building." He also said he could think of "a lot of things that might occur around the building or in front of the building that might have something to do with the security within." He was asked whether or not it was true that the employees of the Guard and Detective Agency were given considerable discretion as to what incidents they felt merited such investigation, and he answered, "yes, we leave that up to them." On cross-examination, Mr. MacAllan was asked to describe briefly the duties of a security guard such as the petitioner. He stated that a part of the duties was for him to make rounds and punch the time clock as he makes his rounds. Another duty, he said, is to look for fires, within and without the building, and also to look for vandals, or anything that has to do with the security of the building. Mr. MacAllan stated, "one of the things that we are afraid of is someone could take a shot at the building and cripple our equipment if they ever hit it with a bullet, for instance." One of the employees of the bank, Sharon Gilbert, testified that she was present outside the Valley National Bank Operations Center at the time the accident occurred on the Black Canyon Highway, and until after the petitioner had been struck by the automobile. She was on her lunch break at the time. She stated that at least five or six employees of the Bank had left the Bank premises and were standing by the fence adjacent to the Black Canyon Highway, looking down at the accident which had occurred there. She said that at the time the petitioner was injured, she was standing at the fence with a man who was a stranger to her, and was not to her knowledge an

employee of the Bank. She said she had seen the petitioner go back into the Operation Center, then return in the direction of the place where she was standing. She stated she did not see him in the instant prior to his accident, but that when he was hit by the car he was thrown by the impact and landed at her feet.

The Commission made the following findings based upon this evidence before them:

"1. At the time of applicant's accident he was not performing any services for or on behalf of his employer.

"2. At the time of said accident, applicant was not at a place required of or reasonably expected or contemplated in connection with his duties.

"3. Observing and/or investigating an accident on the Black Canyon Freeway is not related nor incidental to matters affecting the security of the premises.

"4. Applicant did not sustain injury by accident arising out of and in the course of his employment."

We have previously stated:

"The test as to whether specific activities are considered to be within the scope of employment or purely personal activities is the reasonableness of such activities. * * * If the activity is found to be reasonable 'the risk inherent in such activity is an incident of his employment'." Charles v. Industrial Commission, 2 Ariz.App. 202, 407 P.2d 391 (1965).

We have examined the entire record in this case, and it is the opinion of this Court that the only reasonable interpretation which can be made therefrom is that the petitioner was within the scope of his employment when he was injured, and that his injury arose out of and in the course of his employment.

The responsibility of this Court is to either affirm or set aside the award. A.R.S. Section 23-951, subsec. D. In view of the conclusions which we have reached that the award must be set aside, we do not deem it necessary to consider other matters presented to us by the petitioner.

CAMERON, C. J., and DONOFRIO, J., concur.