ELIDIO D'ANGELI'S CASE.

Suffolk.   January 8, 1976. — March 2, 1976.

Present: REARDON, QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Workmen's Compensation Act,* Findings by Industrial Accident Board, Injuries to which act applies.

Evidence in a workmen's compensation case warranted findings by the reviewing board that an employee, who observed a coil of wire or rope in the middle of the road while driving to his employee's plant, and, in this "emergency and dangerous situation" stopped, removed the coil, and was struck by an oncoming car as he returned to his vehicle on foot, sustained an injury "arising out of and in the course of his employment," and that, "although the employee used poor judgment," his actions did

---

not amount to "serious and wilful misconduct" so as to bar compensation under G. L. c. 152, § 27. [815-818]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Connolly*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Usher A. Moren* for the employee.

*James D. Casey* for the insurer.

REARDON, J. This case is here for further appellate review following a rescript opinion in the Appeals Court (3 Mass. App. Ct. 764 [1975][a]) which reversed the decision of the Superior Court judge. An appeal had been taken from an order of the Superior Court judge which decreed that the employee was entitled to workmen's compensation benefits with interest thereon and various costs for total incapacity from work "as a result of a personal injury sustained on November 8, 1966 arising out of and in the course of his employment by Cummins Diesel Sales Corporation" (Cummins).

The facts are as follows. The employee had worked as a diesel mechanic for Cummins and its corporate predecessor since 1944. He worked at Cummins's headquarters in Allston and, in addition, did work outside his employer's premises which required travel. On November 8, 1966, he was sent by his employer to the Charles River Breeding Laboratory in North Wilmington in order to repair an engine at that location. While returning therefrom he traveled on Route 93 south, the most direct route from the laboratory to the Cummins headquarters in Allston. He was driving his own motor vehicle, as his employer had authorized, for which on such occasions he was reimbursed his mileage expense. Route 93 is a

---

[a] 330 N.E.2d 499 (1975).

limited access highway with three lanes going north and three lanes going south, divided by a grass median strip, and was at the time of the accident to the employee a high speed road with a sixty miles an hour speed limit. Signs appeared at various locations on Route 93 and on ramps leading to it reading: "Pedestrians, bicycles, horses prohibited." There was a breakdown lane on the right of each side of the highway.

As the employee was proceeding south he noticed an obstruction on the roadway which consisted of a tightly wound coil of heavy rope about three feet in diameter and six inches high which he "believed was dangerous." He pulled into the breakdown lane and proceeded on foot onto the traveled lane and removed the obstruction. Upon his attempt to return to his motor vehicle he was struck by an oncoming car proceeding at fifty to fifty-five miles an hour and sustained severe injuries. He has been totally disabled since the date of the accident and will not again be able to do any heavy lifting or work involving physical exertion to which he was accustomed in his trade as a diesel mechanic.

The single member of the Industrial Accident Board found that he did not sustain a personal injury arising out of and in the course of his employment and that his act in attempting to retrieve the rope "was a serious and substantial deviation from his employment which, in no way, would have inured to the benefit of his employer." He further found that the employee was injured by reason of his "serious and wilful misconduct within the meaning of Section 27 of Chapter 152 of the Workmen's Compensation Act and he is, therefore, not entitled to receive workmen's compensation." The single member dismissed his claim for compensation. However, the reviewing board reversed the decision of the single member on the basis that the facts referred to above indicated that "on November 8, 1966, the employee was in the course of his employment returning to his employer's plant and on Route 93 in Reading, Massachu-

setts, observed a coil of wire or rope tied and [lying] in the middle of the road presenting a dangerous condition to traffic. In this emergency and dangerous situation the employee stopped his car in the breakdown lane and went onto Route 93 to remove this coil of wire or rope and in doing so was struck by an oncoming car. The Reviewing Board [found] that this injury arose out of and in the course of his employment." It further found that "although the employee used poor judgment in retrospect in going onto Route 93 . . . it did not amount to serious and wilful misconduct." The reviewing board ordered that the employee be paid total incapacity compensation, together with various costs, and this was sustained by the order of the Superior Court.

We review the record in the light of the standards set down in *Lambert's Case*, 364 Mass. 832 (1973). "The board is free to reverse the determination of the single member if the reversal is supported by any substantial evidence, and its decision is final and supersedes the finding of the single member. . . . The decision of the board is to stand unless it is unsupported by the evidence, or tainted by error of law." See *Ritchie's Case*, 351 Mass. 495, 496 (1966). This is so even if a different finding could have been made by the board. *Brigham's Case*, 348 Mass. 140, 141 (1964). *Hartman's Case*, 336 Mass. 508, 511 (1957), and cases cited. See *Bator's Case*, 338 Mass. 104, 105 (1958). We have had occasion to note in addition that "[t]his court will sustain the general finding of the reviewing board if possible." *Demetre's Case*, 322 Mass. 95, 98 (1947), and cases cited.

We thus arrive at the principal question presented by this appeal: As matter of law did the employee suffer an injury "arising out of and in the course of his employment" (G. L. c. 152, § 26)? The insurer argues that it would be unwise for us to extend the term "course of employment" to embrace the facts of this case, and refers in particular to *Burgess's Case*, 331 Mass. 90 (1954), as an instance where compensation was denied an employee

allegedly far more deserving of recovery. In that case the employee was a salesman visiting a bank which was in the process of being robbed and was injured when he took after the robber who had shot a bank employee during the commission of the crime. The court there held that the employee had departed from the duties of his employment. In so far as that case might be said to govern the application of the law to the facts in this case, we do not choose to follow it. In the first place, as was said in *Bator's Case, supra* at 106: "This court has never adopted the narrow view that an employee must be engaged in the actual performance of his duties at the moment of injury in order to recover compensation under our statute. All that is required is that his activity be incidental to and not inconsistent with his employment." We have recently, in *Peters's Case,* 362 Mass. 888 (1972), upheld the reviewing board's award of compensation to an employee who ran in search of the police when a fellow employee was being assaulted; and even more recently, in *Canavan's Case,* 364 Mass. 762 (1974), we held that it would be proper for the board to award compensation to a licensed practical nurse who, while off duty, suffered injury when she proceeded to secure assistance for two injured boaters on her employer's premises. As is pointed out in the employee's brief, *Burgess's Case, supra,* has come under rigorous criticism. See L. Locke, Workmen's Compensation § 241, n.67 (1968); 1 A. Larson, Workmen's Compensation § 28.32, at 5-292 - 5-293 (1972).

It is our present view that when a conscientious citizen is in the course of his employment and perceives an imminent danger to the public, as would appear to have been the case in this instance, his endeavor to alleviate the danger should be considered incidental to his employment. In holding that emergency public service may be warranted in the course of employment we are following good precedent.

In *O'Leary* v. *Brown-Pacific-Maxon, Inc.*, 340 U.S. 504 (1951), the decedent, an employee of a government contractor on Guam, had drowned while trying to rescue two men from a channel which ran alongside a recreation center the employer maintained for its employees. In reversing the Court of Appeals and ordering reinstatement of the award of compensation, the Court stated: "The test of recovery is not a causal relation between the nature of employment of the injured person and the accident. . . . Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose." *Id.* at 506-507. See *Edwards* v. *Louisiana Forestry Comm'n*, 221 La. 818, 823-835 (1952); *Reilly* v. *Weber Eng'r Co.*, 107 N.J. Super. 254, 259-262 (Essex County Ct. 1969). While most cases available from other jurisdictions are concerned either with a rescue of identifiable persons in imminent danger of harm (see, e.g., *O'Leary* v. *Brown-Pacific-Maxon, Inc. supra*; *Checker Taxi Co.* v. *Industrial Comm'n*, 33 Ill. 2d 264 [1965]; *Puttkammer* v. *Industrial Comm'n*, 371 Ill. 497 [1939]; *Edwards* v. *Louisiana Forestry Comm'n, supra*; *Reilly* v. *Weber Eng'r Co., supra*) or with emergency assistance to law enforcement officials in effecting an arrest of a criminal (see, e.g., *Zolkover* v. *Industrial Accident Comm'n*, 13 Cal. 2d 584 [1939]; *Babington* v. *Yellow Taxi Corp.*, 250 N.Y. 14 [1928]), we think the same general principles are applicable to an employee seeking to alleviate an immediate danger to the public safety.

The record makes it apparent that the coil of rope or wire on the highway was reasonably viewed by the employee as a dangerous condition. His employment brought him to a position where he encountered this condition and, having apprehended the danger, he acted to eliminate it. The employer assigned the employee to outside work which required the employee to undertake

highway travel. In the course of this aspect of his employment it was to be expected that the employee on occasion would encounter hazardous conditions on the highway posing a threat to the public safety. An attempt to eliminate such dangerous conditions, like a reasonable rescue effort or pursuit in aid of an officer making an arrest, is "one of the risks of the employment, an incident of the service, foreseeable, if not foreseen, and so covered by the statute." *Babington* v. *Yellow Taxi Corp. supra* at 17. See *Ace Pest Control, Inc.* v. *Industrial Comm'n,* 32 Ill. 2d 386 (1965). Cf. *Scott* v. *Rhyan,* 78 Ariz. 80 (1954). As he was incontestably traveling in the course of his employment when he encountered the hazard he sought to remedy, no elaborate extension of concepts of liability under the Workmen's Compensation Act is required to allow recovery to this employee. Cf. 1 A. Larson, Workmen's Compensation § 28.11, at 5-268, § 28.23, at 5-289, § 28.32, at 5-291 - 5-293 (1972); Comment, Workmen's Compensation: A Vehicle for Compensating the Good Samaritan, 24 Buffalo L. Rev. 857, 869-875 (1975).

We are also in agreement with the reviewing board that while the employee may have exercised poor judgment in going out onto Route 93 this did not amount to "serious and wilful misconduct" so as to bar compensation under G. L. c. 152, § 27. Most particularly are we of this view where the board has found specifically that the employee acted in an "emergency and dangerous situation."

It follows that the judgment of the Superior Court is affirmed.

*So ordered.*