630 P.2d 31

**FOOD PRODUCTS CORPORATION,**
**Petitioner-Employer,**

**Great American Insurance Company,**
**Petitioner-Carrier,**

**v.**

**The INDUSTRIAL COMMISSION OF**
**ARIZONA, Respondent,**

**Stephen J. Neilson,**
**Respondent-Employee.**

**No. 1 CA–IC 2373.**

Court of Appeals of Arizona,
Division 1,
Department C.

March 17, 1981.

Rehearing Denied May 12, 1981.

Review Denied June 16, 1981.

Jones, Teilborg, Sanders, Haga & Parks, P.C., by Gregory L. Folger, Phoenix, for petitioner-employer and petitioner-carrier.

Calvin Harris, Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Martin, Gay & Dalton by Ben J. Martin, Scottsdale, and Levine & Harris, P.C., by Jack Levine, Phoenix, for respondent-employee.

## OPINION

O'CONNOR, Presiding Judge.

The sole issue in this special action review of an Industrial Commission award is whether the administrative law judge correctly determined that the respondent employee's injury arose out of and in the course of his employment. We affirm the award.

The respondent employee, Stephen J. Neilson, worked as a truck driver for the petitioner employer, Food Products Corporation, delivering food products to institutional customers. He usually began work at 6:00 A. M. and worked without a break period until he completed his deliveries. He was paid only for the time necessary to complete his route. Although his employer had expressly forbidden him to conduct personal business while making deliveries, the employer had never discussed the giving of assistance to stranded motorists.

On January 9, 1979, the employee arrived at work, loaded his truck, and departed to make his deliveries. At approximately 6:45 A. M., while proceeding north on 32nd Street, Phoenix, Arizona, en route to his first delivery, he observed a stalled car obstructing his lane of traffic. The stalled car was in the fast lane of the six-lane thoroughfare. A young child was visible in the car, and a woman was unsuccessfully struggling to push the car to the curb. Visibility was limited in the dawn light, and rush hour traffic was forthcoming. The respondent employee believed that the woman and child were in danger. He testi-

fied that he thought the best thing to do "was to stop and push, help push the car out of the road to keep her or anyone else from having an accident." Although they were strangers to him, he parked his truck and went to their aid by pushing the stalled car to the right hand curb. Just as he reached curbside, he was hit from the rear by a truck and sustained serious injuries.

The respondent filed a timely claim for workmen's compensation benefits. By notice of claim status, the carrier denied the claim. The employee requested a hearing, as a result of which the administrative law judge determined that the respondent's injury arose out of and in the course of his employment. The award stated in part as follows:

It is the finding herein that the applicant's employment as a delivery man for the defendant employer brought him into contact with an emergency situation for which the applicant should be compensated for injuries received while attempting to help the stalled motorist or rescue her from her predicament upon the basis of the authority of *Scott v. Rhyan, supra* and the humanitarian or good samaritan rule and the Emergency Rescue Rule notwithstanding the so-called positional risk doctrine.

The award was affirmed on administrative review.

The petitioners argue that the accident did not "arise out of and in the course of" the respondent's employment as required by Art. 18, § 8 of the Arizona Constitution and A.R.S. § 23–1021(A). As stated in *Goodyear Aircraft Corp. v. Gilbert*, 65 Ariz. 379, 383, 181 P.2d 624, 626 (1947):

The expressions "arising out of" and "in the course of" the employment are not synonymous; but the words "arising out of" are construed to refer to the origin or cause of the injury, and the words "in the course of" to refer to the time, place, and circumstances under which it occurred. An injury which occurs in the course of the employment will ordinarily, but not necessarily, arise out of it, while an injury arising out of an employment almost necessarily occurs in the course of it.

Each case must be considered and decided on its own facts in determining whether the accident arose out of and in the course of the employment. *Royall v. Industrial Commission*, 106 Ariz. 346, 476 P.2d 156 (1970). In this case, the accident clearly occurred during the time of the employee's regular work schedule, and in a place where he could reasonably have been expected to be for his delivery route. However, the circumstance of the accident was only incidentally related to the performance of the employee's duties. It was essentially a humanitarian response by the employee to a situation which the employee perceived as an emergency faced by a fellow motorist.

With respect to whether the accident "arose out of" the employment, we look to the factor of causation. *Royall v. Industrial Commission, id.* As explained by the court in *Royall*:

As to the "causation" test, the type of accident which most clearly satisfies its requirements is one in which the source of the injury is distinctly associated with the employment, such as machinery breaking, objects falling, dynamite exploding, etc. The weakest type, on the other hand, exists where the source of injury or the cause of death relates to risks personal to the claimant which are in no way work-connected, such as a heart attack entirely attributable to a preexisting heart condition or a death from natural causes. In between these two types—the strongest and the weakest—fall those cases where the source of the injury is neither distinctly associated with the employment nor personal to the claimant, such as being hit by a stray bullet or being struck by lightning. Which of the situations falling within this middle category are considered to meet the "arising" test and which are not must of course be determined on a case-by-case basis, keeping in mind the purposes and intent of the Workmen's Compensation Act in the particular jurisdiction.

106 Ariz. at 350, 476 P.2d at 160. The accident in this instance falls in the "mid-

dle" category, where the source of the injury was not related to a risk personal to the employee, nor was the source distinctly associated with the employment.

In this case we are primarily concerned with whether the accident occurred "in the course of" the employment. If we determine that rescuing a stranger in an emergency was in the course of the employment there is a causal relation between the rescue action and the accident.

There are two reported Arizona cases finding a sufficient work connection to establish that an injury suffered by the employee while he rendered assistance to a stranger was in the course of and arose out of the employment. In *Scott v. Rhyan*, 78 Ariz. 80, 275 P.2d 891 (1954), compensation was granted to an ambulance driver who had driven a sick patient to an airplane in the employer's ambulance. No arrangements had been made for a nurse to accompany the patient during the flight to administer oxygen. The ambulance driver agreed to go on the flight to administer oxygen if needed. His employer was present and did not protest or prohibit the employee from making the flight. The plane crashed and the employee was killed. In granting compensation, the court stated that "[a]n emergency may expand the nature of the employment." 78 Ariz. at 84, 275 P.2d at 894. The court also quoted 1 A. Larson, Workmen's Compensation Law § 28:[1] "Injury incurred in the rescue of a stranger is compensable if the conditions of employment place claimant in the position which requires him, by ordinary standards of humanity, to undertake rescue."

In addition, the court quoted from *O'Leary v. Brown-Pacific-Maxon, Inc.*, 340 U.S. 504, 507, 71 S.Ct. 470, 472, 95 L.Ed. 483, 486 (1951): "All that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose."

In *Scott v. Rhyan*, however, the court found the employer had implicitly consented to the employee's actions. The court did not decide whether compensation could be granted based only on the *O'Leary* concept of the "zone of special danger" and in the absence of the employer's express or implied permission.

The other reported Arizona decision in which compensation was granted under similar circumstances is *McCue v. Industrial Commission*, 5 Ariz.App. 194, 424 P.2d 842 (1967). In *McCue* a bank security guard was struck by a vehicle while investigating an automobile accident on the highway adjacent to the bank property. Although the employee's duties did not include a duty to investigate accidents on the adjacent streets, he had discretion to go to the scene, according to his supervisor. The court set aside the Industrial Commission's denial of benefits and stated:

> The test as to whether specific activities are considered to be within the scope of employment or purely personal activities is the reasonableness of such activities.... If the activity is found to be reasonable "the risk inherent in such activity is an incident of his employment." [citation omitted]

5 Ariz.App. at 197, 424 P.2d at 845.

On the other hand, compensation was denied to an employee in *Gaumer v. Industrial Commission*, 94 Ariz. 195, 382 P.2d 673 (1963), where the employee was a pilot who had agreed to deliver an airplane to a third person on his day off. He wanted to test fly the airplane first and did so, with his employer's knowledge and consent, during a time when he was normally working for his employer. The plane crashed, killing the pilot. In denying benefits, the court said:

> [W]here an employee acts for the benefit of a third person, an injury sustained in such conduct is not generally held to be in the course of the employment, unless the conduct also benefits the employer. [citations omitted] This is true even though the employer permits the employee to

1. The quoted material is now found in substantially the same words in 1A A. Larson, The Law of Workmen's Compensation § 28:00 (1979).

undertake the act for the benefit of another. [citations omitted]

94 Ariz. at 198, 382 P.2d at 674.

We do not find that the respondent employee's conduct here benefitted the employer as contemplated by *Gaumer*. Respondent has argued that humanitarian acts by an employee benefit society as a whole and could benefit the employer indirectly by increasing business goodwill or by increasing the overall likelihood of rescue for the employer in the future. As stated in *Hegwood v. Pittman*, 471 P.2d 888, 891 (Okl. 1970), "the presumed benefit [to the employer] may be stretched so thin as to become fiction." The possible benefit to the employer suggested by respondent is tenuous at best, and we do not base our decision upon that ground.

However, in the case at bar there was substantial evidence to establish that the employee reasonably believed that an emergency existed, which prompted his action. The existence of the apparent emergency distinguishes this case from the *Gaumer* case. We believe the facts in this case more closely parallel those in *D'Angeli's Case*, 369 Mass. 812, 343 N.E.2d 368 (1976). In *D'Angeli*, the injured employee was a mechanic whose work often involved travel. While returning from a work assignment in his own car, he noticed a large coil of rope obstructing part of the highway. Believing that the obstruction was dangerous, he pulled over, walked into the roadway, and retrieved the rope. On his attempt to return to his car he was struck by an oncoming car and severely injured. The Supreme Judicial Court of Massachusetts affirmed a lower court decision awarding benefits, finding that the employee reasonably viewed the condition as dangerous. The court stated:

> His employment brought him to a position where he encountered this condition and, having apprehended the danger, he acted to eliminate it. The employer assigned the employee to outside work which required the employee to undertake highway travel. In the course of this aspect of his employment it was to be expected that the employee on occasion would encounter hazardous conditions on the highway posing a threat to the public safety. *An attempt to eliminate such dangerous conditions, like a reasonable rescue effort* or pursuit in aid of an officer making an arrest, *is "one of the risks of the employment, an incident of the service, foreseeable, if not foreseen, and so covered by the statute."* [citations omitted, emphasis added]

369 Mass. at 817–18, 343 N.E.2d at 371–72. *See also* Comment, Workmen's Compensation: A Vehicle for Compensating the Good Samaritan, 24 Buffalo L.Rev. 857, 869–875 (1975).

In the instant case, the employee was hired to deliver his employer's products. His employment caused him to come into contact with the situation of a stalled vehicle before full daylight and in busy traffic. A small child was in the vehicle, and her mother was attempting to move it. Under these circumstances it was natural and probable that the employee would stop and attempt to move the stranger's vehicle to safety. We find that the conduct of the respondent employee was reasonable under the circumstances. Despite the lack of express or implied permission by the employer, we hold that the Industrial Commission properly determined that the employee was acting in the course of his employment and the accident arose out of it. *Accord, see Puttkammer v. Industrial Commission*, 371 Ill. 497, 21 N.E.2d 575 (1939), and *In re D'Angeli's Case, supra; contra, White v. Milk Producers, Inc.*, 496 P.2d 1172 (Okl. 1972). Accordingly, we affirm the award.

WREN and FROEB, JJ., concur.