PAULA T. PITTMAN, WIDOW; PAULA T. PITTMAN, GUARDIAN AD LITEM OF MEREDITH LAUREN AND BRYAN SCOTT, MINOR CHILDREN OF TIMOTHY SCOTT PITTMAN, DECEASED EMPLOYEE, PLAINTIFFS v. TWIN CITY LAUNDRY & CLEANERS, EMPLOYER; PENNSYLVANIA NATIONAL CASUALTY INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 8210IC429

(Filed 5 April 1983)

**Master and Servant §§ 58, 59— workers' compensation—shooting by fellow employee—intoxication of deceased—injury arising out of employment**

The evidence supported a determination by the Industrial Commission that a laundry employee's death resulted by accident arising out of and in the course of his employment and that G.S. 97-12 did not bar the employee's dependents from recovering compensation because of the employee's intoxication where it showed that deceased was the assistant manager of the employer's entire laundry operation; deceased was working at one of the employer's plants on the last work day before Christmas; deceased and the other employees were drinking at work that day; deceased had been asked to

help close up the plant and was helping oversee that plant's operations; the plant manager and a fellow employee engaged in an argument over whether the fellow employee had been fired; the fellow employee cut the plant manager's neck and then killed deceased with a gun; deceased had a blood alcohol content of .15%; and the shooting was caused by the argument over whether the fellow employee had been fired by the plant manager.

APPEAL by defendants from the Industrial Commission. Opinion and award entered 25 November 1981. Heard in the Court of Appeals 9 March 1983.

This workers' compensation action involves the rights of the surviving dependents of Timothy Scott Pittman to receive benefits because of the death of Pittman who was shot to death by a fellow employee on the premises of the Trade Street plant of Twin City Laundry & Dry Cleaners, Inc., the employer.

The shooting occurred on Friday 22 December 1978, the employer's last work day before Christmas. It was not an ordinary work day. Employees were drinking at work during the day. Most of the employees got off work in the mid-afternoon. Pittman was the assistant manager of the employer's entire operation. While he maintained his office at another of Twin City's plants, it was not unusual for him to work at the Trade Street plant, which he did on 22 December. Pittman had been drinking while working.

After most of the employees had left for the holidays, Pittman and Wayne Tetterton (the Trade Street plant manager), who were among the employees working on 22 December, left the Trade Street plant at about 4:30 p.m. to attend an impromptu Christmas party at a neighboring business. Lester Whitted, a Trade Street washroom technician and part-time delivery truck driver, accompanied them to the party. At the party, each consumed alcohol. At about 5:30 p.m., Pittman, Tetterton and Whitted returned to the Trade Street plant in response to a telephone call informing Tetterton that a customer wanted to pick up some laundry after normal working hours. Tetterton asked Pittman to accompany him to help close the plant. The employees at the plant and the customer who came in were drinking. Work was continuing after the normal 5:30 p.m. closing time so that business would be caught up for the holidays.

Tetterton asked Whitted to take an intoxicated employee home so that the employee would not have to drive a company-owned vehicle home. Whitted did so and he returned at 6:30 p.m. Work continued up to the time of the shooting in that towels were being dried and folded and customers were coming and going.

Jerry Satterfield, an employee who worked late, testified that when he left work at 6:35 p.m., the remaining employees were Pittman and Tetterton, both white, and Whitted and Joyce Fortune, both black. Before leaving, Satterfield overheard Tetterton, Whitted and Fortune discussing the meaning of the word "nigger." The discussion concluded before Satterfield left. When Satterfield left, Pittman, Tetterton and Whitted were watching a dryer, waiting for it to complete its cycle. Such observation was a necessary fire prevention precaution. Joyce Fortune was folding towels.

Pittman, Tetterton, Whitted and Fortune remained at the plant after 6:35 p.m. Within five minutes after Satterfield's departure, Pittman, Tetterton and Whitted got into a dispute about whether Tetterton had fired (and subsequently rehired) Whitted two weeks earlier. A quarrel ensued and Whitted hit Tetterton in the mouth, knocking him to the floor. Whitted then instructed Fortune to tell Tetterton that he had, in fact, fired Whitted, which she did. Whitted then kicked Tetterton in the mouth and pulled out a gun and shot Pittman (who was on his knees begging not to be shot) in the head, killing him. Whitted also cut Tetterton's neck, seriously injuring him.

The medical's examiner's autopsy report showed that Pittman had a blood alcohol content of .15 percent.

The deputy commissioner hearing the case found that work continued up to the time of the fight and that Pittman was performing employment duties until the argument began. The deputy found that Pittman's death was caused not by his consumption of alcohol but by violence erupting out of a quarrel over Tetterton's firing of Whitted. The deputy commissioner concluded that Pittman's death resulted from an injury by accident arising out of and in the course of his employment and that G.S. 97-12 did not bar Pittman's dependents from receiving compensation because his drinking of alcohol was not a cause of the shooting or

his death. An award was entered in favor of Pittman's dependents.

From the award of the deputy commissioner, defendants appealed to the Full Commission. The Full Commission affirmed adopting in full the opinion and award of the deputy commissioner. Defendants appealed to this court.

*Harrington, Shaw & Gilleland, by J. Allen Harrington and Robert B. Gilleland, for plaintiff.*

*Young, Moore, Henderson & Alvis, P.A., by B. T. Henderson, II, and Joseph W. Williford, for defendants.*

WELLS, Judge.

On appeal from the Industrial Commission, the findings of the Commission are conclusive if supported by competent evidence and when the findings are so supported, appellate review is limited to review of the Commission's legal conclusions. *Walston v. Burlington Industries,* 304 N.C. 670, 285 S.E. 2d 822 (1982); *Hilliard v. Apex Cabinet Co.,* 305 N.C. 593, 290 S.E. 2d 682 (1982). Findings of fact may be set aside by the appellate court only when there is no competent evidence to support them. *Click v. Freight Carriers,* 300 N.C. 164, 265 S.E. 2d 389 (1980).

By their first two assignments of error, defendants contend that the evidence was insufficient to support the Commission's findings and conclusions that Pittman's death arose out of and in the course of his employment.

To be compensable, injuries must be "by accident arising out of and in the course of the employment." G.S. 97-2(6). The term "arising out of" refers to the origin or causal connection of the accident to the employment and the phrase "in the course of" refers to the time, place and circumstances under which the accident occurred. *Hoyle v. Isenhour Brick and Tile Co.,* 306 N.C. 248, 293 S.E. 2d 196 (1982); *Barham v. Food World, Inc.,* 300 N.C. 329, 266 S.E. 2d 676 (1980); *see also Robbins v. Nicholson,* 281 N.C. 234, 188 S.E. 2d 350 (1972). Where the evidence shows that the injury occurred during the hours of employment, at the place of employment, and while the claimant was actually in the performance of the duties of the employment, the injury is in the course of the employment. *Harless v. Flynn,* 1 N.C. App. 448, 162 S.E. 2d 47

(1968). With respect to time, the course of employment begins a reasonable time before work begins and continues for a reasonable time after work ends. *Id.* The place of employment includes the premises of the employer. *Id.* Where the employee is engaged in activities that he is authorized to undertake and that are calculated to further, directly or indirectly, the employer's business, the circumstances are such as to be within the course of the employment. *Id.*

There must be some causal relationship between the injury and the employment before the resulting disability or disablement can be said to "arise out of the employment." *Hoyle v. Isenhour Brick and Tile Co., supra; Morrison v. Burlington Industries,* 304 N.C. 1, 282 S.E. 2d 458 (1981). Some risk inherent to the employment must be a contributing proximate cause of the injury and the risk must be enhanced by the employment and one to which the worker would not have been equally exposed apart from the employment. *Gallimore v. Marilyn's Shoes,* 292 N.C. 399, 233 S.E. 2d 529 (1977). For an accident to "arise out of" the employment, it is necessary that the conditions or obligations of the employment put the employee in the position or at the place where the accident occurs. *Felton v. Hospital Guild of Thomasville,* 57 N.C. App. 33, 291 S.E. 2d 158 (1982) (*citing* 1A Larson, The Law of Workmen's Compensation § 6.50 (1978)). To be compensable, the accident " 'need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' " *Robbins v. Nicholson, supra* (*quoting Harden v. Furniture Co.,* 199 N.C. 733, 155 S.E. 728 (1930)).

In *Conrad v. Foundry Company,* 198 N.C. 723, 153 S.E. 266 (1930), the white claimant and a black co-worker were working on the employer's premises. They engaged in a conversation pertaining to their work and the co-worker addressed the claimant in "language deemed by the latter to be insulting." The claimant struck his co-worker with a shovel. The co-worker at that point left work. Half an hour later, he returned and shot the claimant with a shotgun. The Court concluded that the injury arose out of and in the course of the employment, but remanded the cause because the Commission had failed to find whether the claimant's

injury was occasioned by his wilful intention to injure his co-worker.

In *Hegler v. Mills Co.*, 224 N.C. 669, 31 S.E. 2d 918 (1944), our Supreme Court had before it a fact situation where one employee was killed in an assault by a co-worker. Hegler, the deceased, had complained to his employer criticizing the work of his fellow worker. At work two days later, angry and seeking revenge, the co-worker assaulted Hegler, inflicting injuries which resulted in Hegler's death. The Court affirmed the Commission's findings and conclusion that Hegler's death resulted from an accident arising out of and in the course of Hegler's employment.

In *Withers v. Black*, 230 N.C. 428, 53 S.E. 2d 668 (1949), the Court held that the claimant had suffered a compensable injury where he was injured during work by a fellow worker's assault precipitated by the claimant's criticism of the quality of the fellow worker's work.

The evidence in the present case was sufficient to support the Commission's findings and conclusion that Pittman received an injury by accident arising out of and in the course of his employment.

Pittman's death was an "accident" in the most tragic sense. The evidence that Pittman had been asked to help close up the Trade Street plant and that he was helping oversee that plant's operations up until the time violence erupted was sufficient to permit the findings that Pittman was working at the time of the shooting; that the shooting occurred on the premises of the employer; and that Pittman was engaged in activities that he was authorized to undertake and that were calculated to further the employer's business. The Commission's findings on these points support its conclusion that the accident occurred in the course of Pittman's employment.

The Commission found that the shooting was caused by the argument between Tetterton and Whitted about whether Whitted had been fired by Tetterton. This finding is amply supported by the evidence. This fact shows that Pittman's employment was a cause of the accident in that it demonstrates that but for his employment Pittman would not have been exposed to an equal risk of injury. The conditions and obligations of Pittman's employ-

ment put him in the position he was in when the shooting occurred. Looking back on the incident, it is clear that Pittman's death had its origin in a risk connected with his employment and that his death was in direct consequence of that risk. That the shooting was unlikely and unexpected does not matter. This case is fundamentally different from cases where the accident has been held to not have arisen out of the employment because the claimant's assailant was a non-employee who had come to the employer's premises and committed an act of violence inspired by factors not related to the employer's business. *See, e.g., Robbins, supra; Gallimore, supra;* and *Hemric v. Manufacturing Co.,* 54 N.C. App. 314, 283 S.E. 2d 436 (1981), *disc. rev. denied,* 304 N.C. 726, 288 S.E. 2d 806 (1982). In the present case, the shooting was causally connected to the employment and the Commission did not err in concluding that it arose out of the employment.

Defendant's first two assignments are overruled.

By their third and last assignment of error, defendants contend that G.S. 97-12 bars plaintiff's claim. In pertinent part, that statute provides that "[n]o compensation shall be payable if the injury or death to the employee was proximately caused by: (1) His intoxication. . . ." The Commission found that Pittman had consumed alcohol but that the shooting and death were not proximately caused by Pittman's drinking. The record is devoid of any evidence that Pittman's drinking contributed to his death. The Commission correctly concluded that plaintiff's claim is not barred by G.S. 97-12. This assignment is overruled.

The facts found are supported by competent evidence and they, in turn, support the conclusions of the Commission. The opinion and award of the Commission must be and is

Affirmed.

Judges JOHNSON and PHILLIPS concur.