ROSEMARY HUDSON ROBERTS, WIDOW; ROSEMARY HUDSON ROBERTS, GUARDIAN AD LITEM OF JESSICA GAY ROBERTS, MINOR DAUGHTER OF TIMOTHY LEE ROBERTS, DECEASED, EMPLOYEE, PLAINTIFFS v. BURLINGTON INDUSTRIES, INC., EMPLOYER, AND LUMBERMEN'S MUTUAL CASUALTY CO., CARRIER, DEFENDANTS

No. 8610IC1160

(Filed 16 June 1987)

**Master and Servant § 55.5— workers' compensation—death during emergency assistance to stranger—injury arising out of employment**

       The death of a furniture designer who was struck by a vehicle while rendering emergency assistance to a stranger on the highway while in the

course of his employment arose out of his employment since his actions benefited the employer by increasing its good will; his employment placed him in the position of increased risk; and the hazards to an employee who offers assistance to strangers in an emergency situation are not hazards to which the general public is equally exposed.

APPEAL by plaintiff from the North Carolina Industrial Commission. Opinion and Award of the Full Commission entered 5 August 1986. Heard in the Court of Appeals 12 March 1986.

This is a civil action to recover workers' compensation death benefits brought by the widow of defendant's employee, now deceased. On 8 April 1986, Deputy Commissioner Lawrence B. Shuping, Jr., denied plaintiff's claim for death benefits by finding that, although deceased died as a result of an accident in the course of his employment, such accident did not arise out of his employment with defendant. The Full Commission adopted and affirmed Deputy Commissioner Shuping's Opinion and Award, with one dissent. Plaintiff appeals from this Opinion and Award.

The deceased, Timothy Lee Roberts, was employed by defendant, Burlington Industries, as a furniture designer from 21 July 1982 until his death. Roberts worked at the Furniture Division of Burlington Industries in Lexington, North Carolina. He lived with his family in Thomasville, North Carolina, and drove his own car to work. His job did not require any contact with the general public since Burlington sold furniture directly to retailers.

On 18 November 1982, Roberts went on a business trip with some other Burlington employees to a Burlington plant in Asheville, North Carolina. Later that day at about 5:30 p.m., he and the other employees returned by plane to the Greensboro Regional Airport. They left the airport separately in their own cars at about 5:45 p.m. Roberts' whereabouts between 5:45 p.m. and a few minutes before his death at approximately 7:30 p.m. that same evening are uncertain.

At about 7:30 p.m. on 18 November 1982, a man named William Desmond Winters, Jr., was hit by a car as he was walking down the entrance ramp onto Interstate 85-South at the Holden Road Exit in Greensboro, North Carolina. Winters, a transient from Tennessee, had just been told by sheriffs to leave a nearby Howard Johnson's Restaurant for not paying his bill. It had been raining for about an hour and the road was wet. The first person

on the scene was David G. Smith of Greensboro, who was driving down the ramp onto Interstate 85 when he stopped to offer Winters assistance. Timothy Roberts drove his car onto the ramp heading toward the Interstate. From the Holden Road Exit, Interstate 85 runs southeast connecting Greensboro to Thomasville. Roberts stopped his car and asked Smith if Winters needed assistance. Smith said yes. Roberts pulled his car over to the right shoulder of the ramp, got out, and walked back up the ramp to where Winters was lying. Roberts asked Smith if the authorities had been notified yet, to which Smith replied that they had not. Roberts walked up the ramp toward the main road. Smith estimated that Roberts was gone about five to eight minutes before returning to say that he had notified the Highway Patrol. Roberts told Smith that the latter should move farther up the ramp to wave off traffic, and that he, Roberts, would stand by Winters and wave cars off. While standing on the ramp near Winters' body, Roberts was struck and killed by two cars driving down the ramp. An autopsy revealed that Roberts most likely died at the scene.

The parties stipulated that Burlington sold furniture for resale to two retailers with showrooms located near the scene of the accident adjacent to Interstate 85; that both retailers were currently displaying particular lines of Burlington's furniture, the acceptance and marketing of which by both retailers was significant to Burlington; that both retailers were open to the public and conducting business between 5:45 p.m. and 7:35 p.m. on 18 November 1982.

On 17 February 1983, Mrs. Roberts filed a claim for all benefits due under the North Carolina Workers' Compensation Act on behalf of herself and the Roberts' daughter as dependents. On 8 April 1986, Deputy Commissioner Shuping entered an Opinion and Award denying plaintiff's claim. In his Opinion the Deputy Commissioner concluded that, although Mr. Roberts died as a result of an injury by accident which occurred in the course of his employment, Mr. Roberts' injury by accident did not arise out of his employment. On 28 July 1986 the Full Commission adopted Deputy Commissioner Shuping's Opinion and Award as its own. From that Opinion and Award, plaintiff appeals.

*McNairy, Clifford, Clendenin & Parks, by Harry H. Clendenin, III, for plaintiff appellant.*

*Smith, Helms, Mulliss & Moore, by J. Donald Cowan, Jr., and Caroline H. Wyatt, for defendant appellee.*

JOHNSON, Judge.

The sole issue raised by plaintiff's Assignments of Error is whether the Full Commission erred in adopting and affirming the Deputy Commissioner's Opinion and Award denying plaintiff's claim and finding that plaintiff's husband died as a result of an injury by accident which occurred in the course of, but did not arise out of, his employment with defendant Burlington. Plaintiff urges this Court on appeal to reverse the Full Commission's decision based on case law from other jurisdictions holding as compensable injuries suffered by employees while rendering emergency assistance to strangers. In accepting plaintiff's argument, we now hold that injuries sustained by employees while rendering emergency assistance to strangers while in the course of employment may also arise out of that employment and be compensable. This Court will discuss below how today's holding, new to workers' compensation law in North Carolina, fosters the sound public policy of encouraging humanitarian acts by employees which directly or indirectly benefit employers, and is in line with present North Carolina law.

I

On appeal from an award of the Industrial Commission, this Court is limited in inquiry to two questions: (1) whether there was any competent evidence before the Commission to support its findings of fact, and (2) whether the findings of fact of the Commission justify the Commission's conclusions of law and decision. *Hansel v. Sherman Textiles*, 304 N.C. 44, 49, 283 S.E. 2d 101, 104 (1981). The Full Commission adopted the Deputy Commissioner's Opinion and Award, including the findings of fact. The Full Commission made no separate findings. Deputy Commissioner Shuping found as fact the following: from the evidence one can speculate that Mr. Roberts' approximate two hour delay in returning home from the Greensboro Airport following his trip to Burlington's Asheville plant was from stopping at the retail stores in Greensboro to examine items of furniture, and that such was a necessary

part of his employment duties as furniture designer; that, even assuming his delay was for entirely personal reasons, Mr. Roberts had returned to the normal route home from the airport; thus, his death occurred in the course of his employment. Plaintiff does not except to these findings. Defendant does not take issue with the finding and conclusion that Mr. Roberts' death occurred in the course of his employment.

The Deputy Commissioner went on to find that Mr. Roberts' untimely death did not arise out of his employment, but instead arose from the voluntary, albeit indisputably commendable, humanitarian act of a good citizen and "good Samaritan" in stopping to render assistance to an apparent total stranger; that such act was unrelated to his duties as furniture designer for defendant; that defendant did not sell furniture directly to the public and was not directly or indirectly benefited by Mr. Roberts' humanitarianism in the course of his employment; that Mr. Winters was financially destitute when Roberts assisted him, was not a customer of Burlington, and was unlikely ever to become a Burlington customer; that no evidence exists that Burlington even encouraged such humanitarianism by its employees to foster the good will of the company; that Mr. Roberts was driving his own vehicle rather than a company car which would have identified him as a Burlington employee; that Mr. Roberts was identified in some, but not all, local newspapers as a Burlington employee who died a good Samaritan; that any good will flowing to Burlington as a result of Mr. Roberts' actions is too remote to be considered a benefit to Burlington for purposes of compensation. The commissioner concluded, as a matter of law, whether plaintiff should recover as a matter of public policy in order to foster similar humanitarian acts is beyond the Industrial Commission's authority to grant. Plaintiff excepted to these findings of fact and conclusions of law. The Deputy Commissioner concluded as a matter of law that Mr. Roberts died as a result of an injury by accident which occurred in the course of, but did not arise out of, his employment, to which plaintiff excepted.

The Full Commission concluded that the activity in which Mr. Roberts was engaged when he was killed was a risk to which the general public is equally exposed outside of employment; that the risk was not created by nor was it a natural part of his employment as furniture designer; and that the findings of fact of the

hearing commissioner below were supported by the evidence, and adopted and affirmed that Opinion and Award as its own. Plaintiff excepted to each conclusion and the decision.

Although we find that the evidence in the record supports the findings of fact, we find that the Full Commission erred by concluding as a matter of law that Mr. Roberts' injury did not arise out of his employment. We must look at the applicable case law in light of our stated public policy to ascertain our finding that the Commission's conclusion is erroneous.

## II

## A

For an injury to be compensable under the North Carolina Workers' Compensation Act, the injury must be the result of an accident arising out of and in the course of the employment. G.S. 97-2(6). Neither party challenges, nor do we find error with, the Commission's conclusion that Mr. Roberts' injury by accident occurred in the course of his employment. At issue here is whether his injury arose out of his employment. The phrase "arising out of the employment" refers to the origin of or cause of the accidental injury. *Robbins v. Nicholson*, 281 N.C. 234, 238-39, 188 S.E. 2d 350, 353 (1972). There must be some causal connection between the employment and the injury. *Perry v. American Bakeries Co.*, 262 N.C. 272, 274, 136 S.E. 2d 643, 645 (1964). Further, some risk inherent to the employment must be a contributing cause of the injury, and the risk must be one to which the general public would not have been equally exposed apart from the employment. *Pittman v. Twin City Laundry & Cleaners*, 61 N.C. App. 468, 472, 300 S.E. 2d 899, 902 (1983); *Guest v. Brenner Iron & Metal Co.*, 241 N.C. 448, 454, 85 S.E. 2d 596, 600-01 (1955). In other words, the employment must have increased the risk of such injury occurring.

North Carolina law also says that an injury arises out of the employment when it occurs while the employee is engaged in some activity that he is authorized to undertake and that benefits, directly or indirectly, the employer's business. *Long v. Asphalt Paving Co.*, 47 N.C. App. 564, 566, 268 S.E. 2d 1, 3 (1980).

B

"This decision . . . suggests the further question as to whether an injury is compensable when an employee, a motorist, then in the course of his employment, renders 'a courtesy of the road' to another motorist then in need of aid. Consideration of that question must await an appropriate fact situation." *Guest v. Brenner Iron & Metal Co.*, 241 N.C. 448, 454, 85 S.E. 2d 596, 601 (1955). In that opinion discussing a case from another jurisdiction with facts similar to those *sub judice*, our Supreme Court left open the question of whether, in North Carolina, injuries sustained while rendering emergency aid to strangers in the course of one's employment arise out of that employment. Today's case offers a most appropriate, compelling fact situation for answering this question.

In *Guest, supra*, the Court upheld compensation to an employee who was found to have been injured in the course of, and which injuries arose out of, his employment. Guest was hired by Brenner to fix flat tires. Guest was fixing a tire at Brenner's instruction when Guest asked a gas station operator if he could use the station's air hose to get some "free air" to inflate the tire. The station operator complied. Just then, a customer at the gas station was unable to start his car. The station operator asked Guest to help push the customer's car onto the highway. Guest was struck by a passing car and was injured while rendering the requested assistance.

The Court in *Guest, supra*, at 452, 85 S.E. 2d at 600, phrased this issue; "whether plaintiff's claim is compensable turns upon whether the employee acts for the benefit of his employer to *any appreciable extent* or whether the employee acts solely for his own benefit or purpose or that of a third person." (Emphasis supplied.) In holding that Guest's assistance to the gas station customer did benefit the employer, the Court reasoned that Guest's permission to use the gas station's air pump was contingent upon his helping the station attendant push the customer's stalled car. In essence, reciprocal assistance was extended. *Id.* at 453, 85 S.E. 2d at 600. Brenner's benefiting by receiving "free air" from the gas station was contingent upon Guest, its employee, assisting the gas station's operator. *Id.* The Court reasoned that Guest's assistance was requested in return for the gas station's assistance, and

therefore Guest's assistance was related to his employment. Such assistance is distinguished from unconditional assistance, or "the act of a good Samaritan," which the Court stated was unrelated to the employment. *Id.* at 455, 85 S.E. 2d at 601.

In the case *sub judice*, Mr. Roberts' assistance to Mr. Winters was undoubtedly the act of a very good Samaritan. We do not find, however, that his act was the kind of unconditional assistance that the Court in *Guest, supra,* reasoned to be unrelated to the employment. As stated in *Guest, supra,* whether the employee's injury is compensable depends on whether his assistance to the third party benefited his employer *to any appreciable extent.* We find that Mr. Roberts' humanitarian actions while driving home from work, wherein he tried to save the life of a stranger injured on the highway, benefited defendant Burlington Industries by increasing the employer's good will. Several local newspapers carried the story and noted that Mr. Roberts worked for Burlington, a major employer and manufacturer in the Greensboro area. A trade publication called "Furniture Today" ran an article on Mr. Roberts calling him a furniture designer for Burlington who died "in the act of being a good Samaritan." Although the record does not show any direct benefit to Burlington from Mr. Roberts' action, such as increased sales in the Greensboro area right after reports of his death, the record does show that the good will of Burlington can only have been benefited by having Mr. Roberts in its employment. The Deputy Commissioner's characterization of the difficulty in assessing the good will of an employer as a function that is too remote and immeasurable is correct in many instances; however, we find that the facts in this case compel us to conclude that Burlington's good will benefited *to some appreciable extent, see Guest, supra,* at 452, 85 S.E. 2d at 600, by the heroism of its employee, Mr. Roberts. Although the extent to which Burlington benefited is uncertain, that benefit need not be direct to show that the employee's injuries arose out of his employment. *Long, supra,* at 566, 268 S.E. 2d at 3.

North Carolina joins other jurisdictions which hold that injuries sustained in the course of employment while rendering emergency assistance to strangers are compensable under workers' compensation legislation. *O'Leary v. Brown-Pacific-Maxon, Inc.,* 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951); *Food Products*

*Corp. v. Industrial Comm.*, 129 Ariz. 208, 630 P. 2d 31 (1981); *Big "2" Engine Rebuilders v. Freeman*, 379 So. 2d 888 (Miss. 1980); *In re D'Angeli's Case*, 369 Mass. 812, 343 N.E. 2d 368 (1976); *see* 1A Larson, Workmen's Compensation Law sec. 28.23 (1985). According to Professor Larson, the United States Supreme Court in *Brown-Pacific-Maxon, supra,* adopted a view shared by many jurisdictions whereby injuries sustained during acts in emergency are compensable if the employment places the employee in the emergency:

> The *Brown-Pacific-Maxon* case adopts the positional risk theory in its purest form, by finding work-connection if the employment merely brings the employee to the place where he encounters a moral obligation to rescue a stranger. Presumably it would follow that an office worker who observed a street accident from a third-floor window would remain in the course of employment when rushing to aid the victims, since the employment would have provided the contact between the employee and the rescue opportunity.

1 Larson, *supra,* sec. 28.23 at 5-423-24. Although the quote hereinabove relates to the positional-risk doctrine "in the course of" employment, Professor Larson goes on to note the application of positional-risk "arising out of" employment:

> An important and growing number of courts are accepting the full implications of the positional-risk test: An injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed claimant in the position where he was injured.

Larson, *supra,* sec. 6.50 at 3-6 (emphasis supplied). We have cited the positional-risk test hereinabove with approval as it relates to injuries arising out of the employment in *Felton v. Hospital Guild of Thomasville*, 57 N.C. App. 33, 38, 291 S.E. 2d 158, 160 (1982).

Applying the positional-risk test to the facts *sub judice,* we find that the conditions and obligations of Mr. Roberts' employment put him in the position where he was killed. He was required by his employment with Burlington to visit a furniture plant in Asheville. This business trip necessitated flying from Greensboro Regional Airport. Mr. Roberts therefore had to drive

himself to and from the airport. It was while on his way home that night when he encountered a stranger in need on the highway and offered assistance. The evidence clearly shows that an emergency existed, and that Mr. Roberts reasonably believed that such an emergency existed. *See Food Products, supra,* at 211, 630 P. 2d at 32. Under the circumstances, it was reasonable to expect an employee to stop and render assistance. We hold that Mr. Roberts' employment placed him in the position of increased risk, considering that his actions were reasonable, and that by being placed at such risk by his employment, his injuries arose out of that employment.

Defendant argues that Mr. Roberts' injury should not be compensated because the public is equally exposed to the hazard of being hit by a car on the highway while rendering emergency aid, and that nothing about being a furniture designer increased Mr. Roberts' risk of being placed in such an emergency. As noted in *Pittman, supra,* at 472, 300 S.E. 2d at 902, for an accident to arise out of employment in North Carolina, the risk must not have been one to which the employee would have been equally exposed apart from the employment. The risk must not be common to the general public. *Harless v. Flynn,* 1 N.C. App. 448, 458, 162 S.E. 2d 47, 52 (1968).

Defendant cites a number of cases holding that injuries sustained by employees did not arise out of the employment because the hazards were ones to which the general public was equally exposed. *Plemmons v. White's Service, Inc.,* 213 N.C. 148, 195 S.E. 370 (1938) (station attendant died of complications from dog bite); *Gallimore v. Marilyn's Shoes,* 292 N.C. 399, 233 S.E. 2d 529 (1977) (shoe store employee killed by armed robber in mall parking lot); *Sandy v. Stackhouse, Inc.,* 258 N.C. 194, 128 S.E. 2d 218 (1962) (repairman killed in car crash while returning to hotel from store during business trip); *Perry v. American Bakeries Co.,* 262 N.C. 272, 136 S.E. 2d 643 (1964) (salesman injured when diving into pool at hotel where business meeting was being held); *Bartlett v. Duke University,* 284 N.C. 230, 200 S.E. 2d 193 (1973) (employee choked to death during dinner while on business trip); *Snyder v. General Paper Co.,* 277 Minn. 376, 152 N.W. 2d 743 (1967) (employee choked to death during business dinner).

The case *sub judice* is distinguishable from the cases above in at least one important respect; Mr. Roberts was killed while rendering assistance to a stranger during an emergency. All of

the employees in the cases above cited by defendant were injured or killed by hazards common to the public. Mr. Roberts' affirmative act of humanitarianism was, by its selfless nature, not something generally done by all. Hazards such as crime, dog bites, or choking are subjected upon all citizens. We do not willingly encounter such hazards. Offering assistance in an emergency, however, is an *affirmative* act, one which takes any hazards that may be encountered during such assistance out of the category of hazards subjected upon the general public. In this respect, we find that the hazards bearing upon employees who offer assistance to strangers in emergency situations are not hazards to which the general public is equally exposed. Therefore, in line with *Pittman, supra*, we hold that, as a matter of law, Mr. Roberts' death arose out of a risk that he would not have been exposed to but for his employment.

### III

We note that our holding in this case is based on a sound policy that seeks to foster in employees acts of humanitarianism such as those displayed by Mr. Roberts in his last few moments alive. Furthermore, we emphasize the benefit to the employer of such a policy; if this Court were to hold that the tragic death of an employee while selflessly trying to help a stranger in need did not arise out of his employment, we would discourage some of the very characteristics that an employer no doubt looks for when hiring employees to impress upon customers the quality of its work force. It is hard to see how the good will of Burlington Industries could not have benefited from the publicity in the Greensboro area surrounding Mr. Roberts' tragic death.

We are mindful, however, of the great risk we run in fashioning a holding that sweeps too broadly to encompass behavior less of the caliber of Mr. Roberts, and more of the individual who seeks personal gain in his seemingly altruistic endeavors. The rendering of emergency assistance to strangers by employees that, if injury occurs, falls within the course of employment must be of a truly selfless nature. Such a limit on today's holding necessarily requires a case-by-case analysis.

The Opinion and Award of the Full Commission is

Reversed.

Judges EAGLES and ORR concur.